**Ms. Cidni CAREY, Plaintiff,**

v.

**NEW YORK GASLIGHT CLUB, INC., et al., Defendants.**

**No. 77 Civ. 4794 (HFW).**

United States District Court, S. D. New York.

Sept. 15, 1978.

NAACP Special Contribution Fund, New York City, for plaintiff; Nathaniel R. Jones, James I. Meyerson, New York City, of counsel.

Kane, Kessler, Proujansky, Preiss & Permutt, P. C., New York City, for defendants; Albert N. Proujansky, New York City, of counsel.

MEMORANDUM DECISION

WERKER, District Judge.

The plaintiff in this employment discrimination action brought pursuant to the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., was awarded back pay and an offer of a position as a cocktail waitress in defendants' club after prevailing in a state administrative proceeding and upon appellate review by the state courts. The complaint was initially filed with the federal Equal Employment Opportunities Commission (EEOC) but that agency referred the matter to the New York State Division of Human Rights (Division) pursuant to 42 U.S.C. § 2000e–5(c). The plaintiff now moves for an award of attorneys' fees

in this suit which was commenced before the remedies provided for under state law had been exhausted.[1] Since all of the relief requested by the plaintiff with the exception of attorneys' fees was awarded in the state forum the issue presented is whether the plaintiff is entitled to those fees simply because a parallel federal court action was filed after the EEOC impliedly reassumed jurisdiction over the matter and issued a "right to sue letter."

## BACKGROUND

The relevant facts are not involved. At the request of the Division the plaintiff filed a verified complaint in February of 1975. The Division thereafter determined that it had jurisdiction over the matter and that probable cause existed to believe that the Human Rights Law had been violated. In May of 1975 plaintiff's counsel wrote to the EEOC and asked that it "reassume jurisdiction . . . so that . . . [the plaintiff could] obtain a Right to Sue letter *at an appropriate time in the future."* (Emphasis added.) The Division subsequently held a hearing on the matter and issued a decision and order on August 13, 1976. Between that date and August 26, 1977, when the Appeal Board affirmed the decision below, plaintiff's counsel had a series of telephone conversations with and sent certain documents to the EEOC District Office. These communications took place over a period from May 22, 1975 to on or about November 13, 1976 and prompted the District Office to notify the plaintiff by letter that the EEOC had decided not to litigate her case. The District Office letter

was received by the plaintiff on July 13, 1977 and contained a right to sue letter. The plaintiff therefore filed the instant action within ninety days as is required by 42 U.S.C. § 2000e–5(f)(1). On November 3, 1977 the Appellate Division, First Department, unanimously affirmed the administrative determinations and on February 14, 1978 the New York Court of Appeals denied the defendants leave to appeal.

## DISCUSSION

Although plaintiff's counsel merely asked the EEOC to reassume jurisdiction as a preparatory measure, the District Office of the EEOC went beyond that narrow request and issued a right to sue letter while the state proceedings were still pending. The appropriateness of that action is in my view very doubtful; particularly so when the EEOC had the alternative of awaiting the conclusion of the state administrative and judicial proceedings. ·

By acting as it did the EEOC placed the plaintiff in a position where she had no option but to preserve her rights by filing a complaint in federal court. However while it appears that the pendency of related employment discrimination actions in both state and federal courts is now a sanctioned practice, *see Voutis v. Union Carbide Corp.,* 452 F.2d 889, 893–94 (2d Cir. 1971), *cert. denied,* 406 U.S. 918, 92 S.Ct. 1768, 32 L.Ed.2d 117 (1972), it by no means follows that the mere filing of a federal suit should serve to entitle an aggrieved party to attorneys' fees. And under the circumstances of this case I conclude that it does not.

1. The state procedures are set forth in the New York Human Rights Law which is found in Article 15 of the New York Executive Law, § 290 *et seq.* (McKinney 1972–1977 Supp.). Briefly a party claiming to be aggrieved by a discriminatory employment practice may file a verified complaint with the Division. *Id.* § 297(1). After a preliminary investigation the Division determines whether it has jurisdiction to hear the matter and if so whether there is probable cause to believe that an unlawful practice has existed or continues to exist. *Id.* § 297(2). Assuming that it finds probable cause the Division may direct the respondent or respondents to answer the charges at a pub-

lic hearing before a hearing examiner. *Id.* § 297(4)(a). At such a hearing the complainant's case is presented by an attorney for the Division or at the complainant's option by privately retained counsel. *Id.* Adverse determinations may be appealed to the New York State Human Rights Appeal Board (Appeal Board), *id.* § 297–a, and thereafter to the Appellate Division of the New York State Supreme Court and possibly the New York Court of Appeals. *Id.* § 298.

Making use of the state administrative remedies generally precludes a complainant from bringing an employment discrimination suit in state court. *Id.* § 297(9).

The plaintiff had the option of pursuing her state administrative remedies without incurring any expenses at all for legal services since section 297 of the New York Human Rights Law provides that the "case in support of the complaint shall be presented by one of the attorneys or agents of the [D]ivision." Rather than availing herself of such free representation the plaintiff chose to be represented by privately retained counsel. However because neither she nor her attorneys could have foreseen that there would be a need to file a separate federal court action it is clear that they could not have expected that the defendants would ever be required to shoulder the costs of representing her in the state forum. Consequently I see no reason why they should now be given a windfall simply because the EEOC acted precipitously. In this connection I note that any other solution might lead to use of the federal courts as a procedural conduit through which otherwise unwarranted relief could be obtained. This would lead to massive waste of judicial and administrative resources and is clearly a result to be avoided.

*Parker v. Califano,* 182 U.S.App.D.C. 322, 561 F.2d 320 (1977), which is cited by the plaintiff, is in my opinion inapposite. That case involved a claim of discrimination by an employee of a federal agency. There is an administrative and judicial enforcement mechanism for such claims pursuant to section 717 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16, but unlike the provisions governing suits against private employers those controlling suits by federal employees do not provide for the complainant to be represented by attorneys or agents employed by the government. Therefore the complainant in *Parker* (unlike the plaintiff in this action) had no alternative but to retain counsel. In such circumstances I agree that an award of attorneys' fees is appropriate; under the facts of this case I do not.

The application for fees is consequently denied.

SO ORDERED.